**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

_____

**HAROLD D. WOODSIDE, JR.,**

                             **Plaintiff,**                    **7:14-cv-1234**
                                                               **(GLS)**

             **v.**

**COMMISSIONER OF SOCIAL**
**SECURITY,**

                             **Defendant.**
_____

**APPEARANCES:**                              **OF COUNSEL:**

**FOR THE PLAINTIFF:**
Conboy, McKay Law Firm                         PETER L. WALTON, ESQ.
407 Sherman Street
Watertown, NY 13601-9990

**FOR THE DEFENDANT:**
HON. RICHARD S. HARTUNIAN                       SIXTINA FERNANDEZ
United States Attorney                          Special Assistant U.S. Attorney
100 South Clinton Street
Syracuse, NY 13261

Steven P. Conte
Regional Chief Counsel
Social Security Administration
Office of General Counsel, Region II
26 Federal Plaza, Room 3904
New York, NY 10278

**Gary L. Sharpe**
**Senior District Judge**

## MEMORANDUM-DECISION AND ORDER

## I. Introduction

Plaintiff Harold D. Woodside, Jr. challenges the Commissioner of Social Security's denial of Disability Insurance Benefits (DIB), seeking judicial review under 42 U.S.C. § 405(g). (Compl., Dkt. No. 1.) After reviewing the administrative record and carefully considering Woodside's arguments, the court affirms the Commissioner's decision and dismisses the complaint.

## II. Background

On July 1, 2011, Woodside filed an application for DIB under the Social Security Act ("the Act"), alleging disability since January 22, 2011. (Tr.[1] at 63-69, 147-53.) After his application was denied, (*id.* at 72-79), Woodside requested a hearing before an Administrative Law Judge (ALJ), which was held on December 13, 2012, (*id.* at 35-62, 87-88). On January 9, 2013, the ALJ issued an unfavorable decision denying the requested benefits, (*id.* at 17-34), which became the Commissioner's final determination upon the Appeals Council's denial of review, (*id.* at 1-6).

Woodside commenced the present action by filing his complaint on

---

[1] Page references preceded by "Tr." are to the Administrative Transcript. (Dkt. No. 7.)

October 9, 2014 wherein he sought review of the Commissioner's determination. (Compl.) The Commissioner filed an answer and a certified copy of the administrative transcript. (Dkt. Nos. 6, 7.) Each party, seeking judgment on the pleadings, filed a brief. (Dkt. Nos. 8, 10.)

## III.  Contentions

Woodside contends that the Commissioner's decision is tainted by legal error and is not supported by substantial evidence.[2] (Dkt. No. 8 at 12-25.) Specifically, Woodside claims that the ALJ erred in : (1) evaluating the severity of Woodside's impairments; (2) weighing the medical opinion evidence; (3) rendering his residual functional capacity (RFC) determination; and (4) assessing Woodside's credibility. (*Id.*) The Commissioner counters that the appropriate legal standards were used by the ALJ and his decision is also supported by substantial evidence. (Dkt. No. 10 at 4-16.)

## IV.  Facts

The court adopts the undisputed factual recitations of the parties and the ALJ. (Dkt. No. 8 at 1-11; Dkt. No. 10 at 1; Tr. at 22-29.)

---

[2] "Substantial evidence is defined as more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept to support a conclusion." *Alston v. Sullivan*, 904 F.2d 122, 126 (2d Cir. 1990) (internal quotation marks and citations omitted).

# V. **Standard of Review**

The standard for reviewing the Commissioner's final decision under

42 U.S.C. § 405(g) is well established and will not be repeated here.  For a

full discussion of the standard and the five-step process by which the

Commissioner evaluates whether a claimant is disabled under the Act, the

court refers the parties to its previous decision in *Christiana v. Comm'r of*

*Soc. Sec. Admin.*, No. 1:05-CV-932, 2008 WL 759076, at *1-2 (N.D.N.Y.

Mar. 19, 2008).

# VI. **Discussion**

## A.    **Severity Determination**

First, Woodside contends that the ALJ erred in failing to find his

lumbar myxopapillary ependymoma and bilateral lower extremity pain and

numbness "severe."  (Dkt. No. 8 at 12-17.)[3]  The court agrees with the

Commissioner that remand is not required here because the ALJ properly

evaluated the severity of these impairments, and, in any event, he

considered the functional limitations caused by these impairments in

---

[3] Woodside's first argument states that "[t]he Commissioner failed to properly assess the severity of [Woodside]'s lumbar myxopapillary ependymoma, bilateral lower extremity pain and numbness, diverticulitis, diabetes and obesity."  (Dkt. No. 8 at 12.)  However, the discussion that follows makes no mention of diverticulitis, diabetes, or obesity.  (*Id.* at 12-15.)  As such, the court limits its discussion to Woodside's lumbar myxopapillary ependymoma and bilateral lower extremity pain and numbness.

determining Woodside's RFC.  (Dkt. No. 10 at 4-8.)

At step two of the sequential analysis, the ALJ must determine whether the claimant has a "severe medically determinable physical or mental impairment."  20 C.F.R. § 404.1520(a)(4)(ii).  A finding of not severe is appropriate when an impairment, or combination of those impairments, "does not significantly limit [the claimant's] physical or mental ability to do basic work activities."  *Id.* § 404.1521(a).  Basic work activities are "the abilities and aptitudes necessary to do most jobs," including: "[p]hysical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling."  *Id.* § 404.1521(b).  "The 'mere presence of a disease or impairment, or establishing that a person has been diagnosed or treated for a disease or impairment' is not, itself, sufficient to deem a condition severe."  *Bergeron v. Astrue*, No. 09-CV-1219, 2011 WL 6255372, at *3 (N.D.N.Y. Dec. 14, 2011) (quoting *McConnell v. Astrue*, No. 6:03-CV-0521, 2008 WL 833968, at *2 (N.D.N.Y. Mar. 27, 2008)).  The failure to find an impairment severe at step two may be deemed harmless error, particularly where the disability analysis continues and the ALJ later considers the impairment in his RFC determination.  *See Tryon v. Astrue*, No. 5:10-CV-537, 2012 WL 398952,

at *4 (N.D.N.Y. Feb. 7, 2012); *see also Plante v. Astrue*, No. 2:11-CV-77, 2011 WL 6180049, at *4 (D. Vt. Dec. 13, 2011).

In this case, at step two, the ALJ determined that Woodside's low back pain and lumbar degenerative disc disease were severe impairments. (Tr. at 23-24.) The ALJ noted that a February 2010 MRI of Woodside's lumbar spine revealed a myxopapillary ependymoma, or a slow growing tumor in his spinal column. (*Id.* at 23); *see* Nat'l Ctr. for Advancing Translational Scis., Genetic and Rare Diseases Info. Ctr., Myxopapillary ependymoma, https://rarediseases.info.nih.gov/gard/10633/myxopapillary -ependymoma/resources/1 (last visited Feb. 5, 2016). The ALJ concluded that the tumor was not a severe impairment under the regulations because it had not grown in size, no surgery had been performed to remove it, and Woodside had not sought any medical treatment for it since his alleged onset date. (Tr. at 23.) Despite Woodside's claims to the contrary, (Dkt. No. 8 at 13-17), the ALJ's reasoning is supported by substantial evidence. In March 2010, treating neurosurgeon David Carter reviewed an MRI from 2008 and opined that the tumor was "probably unchanged in size." (Tr. at 264.) Moreover, in May 2012, treating physician Neel Shah noted that the tumor was stable. (*Id.* at 447.) Although Woodside argues that surgical

6

intervention has not been ruled out, (Dkt. No. 8 at 13), the ALJ merely noted that Woodside has not yet had surgery, (Tr. at 23). Further, while the ALJ used the word "questionable" to describe the tumor, he concluded that it was a medically determinable impairment and only found that it was not severe due to the lack of medical evidence supporting any limitations in Woodside's ability to function caused by the tumor. (*Id.*) Indeed, the treatment notes of record reveal that Woodside has not seen Dr. Carter since his alleged onset date, nor received any treatment for the tumor itself. (*Id.* at 54, 327.)

Woodside argues that the tumor may be causing or contributing to his back pain and numbness. (Dkt. No. 8 at 16-17.) However, the ALJ found Woodside's back pain to be a severe impairment, and included functional limitations resulting therefrom in his RFC determination. (Tr. at 22-23, 25-28.) Thus, the court sees no reason to remand on this basis. Similarly, with respect to his lower extremity pain and numbness, Woodside argues that these impairments "all relate to [his] complaints of low back pain and other symptoms in his lower back." (Dkt. No. 8 at 14.) For that exact reason, Woodside's argument that remand is required due to errors in the ALJ's severity determination must fail. When rendering his

RFC determination, the ALJ explicitly considered Woodside's complaints of lower extremity numbness and pain as part of the signs and symptoms of his back impairment. (Tr. at 25.) Thus, although the ALJ did not discuss Woodside's lower extremity pain and numbness at step two of the sequential evaluation, he did not err and remand is not required here. *See Oot v. Astrue*, 5:11-cv-342, 2012 WL 12518632, at *2 (N.D.N.Y. Apr. 24, 2012) (holding that an ALJ did not err at step two when he failed to evaluate the severity of the symptoms and signs of a claimant's impairment separately from the impairment itself); *see also Tryon*, 2012 WL 398952, at *4 (explaining that the failure to find an impairment severe may be deemed harmless error, particularly where the disability analysis continues and the ALJ later considers the impairment in his RFC determination).

**B.** **Treating Physician Rule**

Next, Woodside argues that the ALJ failed to properly follow the treating physician rule. (Dkt. No. 8 at 17-20.) According to Woodside, the ALJ erred in giving "little weight" to the opinion of treating anesthesiologist Robert Martinucci. (*Id.*) The court disagrees.

Medical opinions, regardless of the source, are evaluated by considering several factors outlined in 20 C.F.R. § 404.1527(c).

Controlling weight will be given to a treating physician's opinion that is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence." *Id.* § 404.1527(c)(2); *see Halloran v. Barnhart*, 362 F.3d 28, 32 (2d Cir. 2004). Unless controlling weight is given to a treating source's opinion, the ALJ is required to consider the following factors in determining the weight assigned to a medical opinion: whether or not the source examined the claimant; the existence, length and nature of a treatment relationship; the frequency of examination; evidentiary support offered; consistency with the record as a whole; and specialization of the examiner. *See* 20 C.F.R. § 404.1527(c). The ALJ must provide "'good reasons' for the weight given to the treating source's opinion." *Petrie v. Astrue*, 412 F. App'x 401, 407 (2d Cir. 2011) (citations omitted). "Nevertheless, where 'the evidence of record permits [the court] to glean the rationale of an ALJ's decision,'" it is not necessary that the ALJ "'have mentioned every item of testimony presented to him or have explained why he considered particular evidence unpersuasive or insufficient to lead him to a conclusion of disability.'" *Id*. (citation omitted).

In December 2012, Dr. Martinucci opined that Woodside could lift

and carry less than ten pounds only occasionally, stand and walk for less than two hours in a workday, and sit for less than six hours in a work day. (Tr. at 461-62.)  Further, his opinion states that Woodside is limited in his ability to push and pull and reach in all directions, and can never perform any postural movements, including climbing, balancing, and stooping.  (*Id.* at 462-63.)  The ALJ gave little weight to Dr. Martinucci's restrictive opinion because it was not supported by the clinical findings in his treatment notes, he treated Woodside on only two occasions, only one of which included an examination, he is not a specialist in back impairments, and his opinion is inconsistent with the remainder of the medical opinions of record.  (*Id.* at 27-28.)  Clearly, this analysis is legally sufficient.  *See* 20 C.F.R. § 404.1527(c).  However, Woodside asserts that the ALJ's decision is not sufficiently supported by the record because it discounts the clinical findings found by Dr. Martinucci and the Social Security Administration's own consultative examiners, and only non-treating and non-examining physicians authored contrary opinions to that of Dr. Martinucci.  (Dkt. No. 8 at 18-20.)  Woodside also contends that there was no basis in the record for the ALJ's conclusion that Dr. Martinucci's opinion was based wholly on Woodside's subjective complaints.  (*Id.* at 18-19.)  Notwithstanding

Woodside's arguments, the court's review of the administrative record reveals that the ALJ's reasons for discounting Dr. Martinucci's opinion are amply supported by substantial evidence.

First, while clinical findings on examinations of Woodside's back throughout the record, such as tenderness, reduced range of motion, and positive straight leg raises bilaterally, (Tr. at 279-80, 307-08, 310-11, 344, 446-47, 452-53), support his subjective complaints, they do not compel the conclusion of disability. *See Bonet ex rel. T.B. v. Colvin*, 523 F. App'x 58, 59 (2d. Cir. 2013) ("[W]hether there is substantial evidence supporting the [claimant]'s view is not the question[,] rather, [the court] must decide whether substantial evidence supports *the ALJ's decision*."). Indeed, Woodside points out that, on examination in October 2011 by consultative examiner Sandra Boehlert, walking on his heels and toes caused "pulling in his back" and squatting fully required a "two-hand assist" and caused "pulling in his back." (Tr. at 310, Dkt. No. 8 at 19.) However, based on the entirety of her examination,[4] Dr. Boehlert concluded that Woodside's only

---

[4] At this examination, Woodside's gait and stance were normal, he used no assistive devices, he was able to change for the exam and get on and off the exam table without help, and he was able to rise from a chair without difficulty. (Tr. at 310.) While he had tenderness and reduced range of motion in his back, sensory deficit in his left leg, and straight leg raising was positive, the exam also revealed full range of motion in his hips, knees, and ankles, 5/5 strength and no muscle atrophy in his lower extremities, and physiologic and equal reflexes.

limitations were for "heavy lifting and heavy bending and twisting." (Tr. at 311.) This opinion is far less restrictive than that of Dr. Martinucci. (*Id.* at 461-64.) With respect to consultative examiner Roberto Rivera, although the ALJ did not explicitly discuss all of Dr. Rivera's notations, such as Woodside's slow measured steps or slow and deliberate movements getting on and off of the exam table, he clearly considered all of Dr. Rivera's findings, as well as Dr. Rivera's far less restrictive functional assessment. (Tr. at 25, 27.) Woodside cites no legal authority that requires an ALJ to discuss each of the positive clinical findings indicated in a claimant's medical record, and, in fact, the Second Circuit has stated that it is not necessary that the ALJ "have mentioned every item of testimony presented to him or have explained why he considered particular evidence unpersuasive or insufficient to lead him to a conclusion of disability." *See Petrie*, 412 F. App'x at 407 (internal quotation marks and citation omitted).

In addition to the opinions of these one-time examiners, the ALJ had before him the opinions of two non-examining impartial medical experts. Orthopedic surgeon Charles Hancock reviewed the medical evidence of record on August 14, 2012, and opined that Woodside was able to lift and

---

(*Id.* at 310-11.)

carry up to twenty pounds frequently, sit, stand, and walk for up to six hours at a time, and occasionally reach overhead, stoop, and crouch. (*Id.* at 397-405.) Neurosurgeon Woodrow Janese also reviewed Woodside's medical records in August 2012 and opined that he was capable of frequently lifting and carrying twenty pounds, sitting, standing, and walking for up to four hours at a time and six hours total in a workday, reaching in all directions, and performing all postural movements. (*Id.* at 413-18.) "[A]n ALJ is entitled to rely upon the opinions of both examining and non-examining State agency medical consultants, since such consultants are deemed to be qualified experts in the field of social security disability." *Baszto v. Astrue,* 700 F. Supp. 2d 242, 249 (N.D.N.Y. 2010).

Woodside asserts that "Drs. Hancock and Janese did not review all available medical records prior to rendering their opinions." (Dkt. No. 8 at 18.) He bases this assertion on the fact that "Dr. Hancock only referenced reviewing the consultative [examiners'] reports, and only one MRI report" from his treatment records. (*Id.*) Further, he claims that "Dr. Janese did not reference reviewing or considering any information as the basis for his Medical Source Statement." (*Id.*) It is true that Dr. Hancock cited specific findings from Woodside's consultative examinations as well as the

13

February 2010 MRI which revealed Woodside's spinal tumor as support for his medical opinion. (Tr. at 398, 400-01.) Nevertheless, Woodside's reasoning is flawed. That certain evidence was highlighted by Dr. Hancock as support for his opinion does not necessarily mean that he failed to review all the other available medical evidence. Further, Dr. Janese cited various medical records which he considered in forming his opinion, including treatment notes and MRIs, (Tr. at 410), and Woodside's claims to the contrary are false. Because these opinions were supported by specific medical findings, the ALJ properly exercised his discretion to rely on them. (Tr. at 26-27.)

Lastly, Dr. Martinucci examined Woodside on only one occasion. (*Id.* at 452-53.) Although this examination revealed some clinical findings, including reduced sensation in Woodside's left thigh and reduced range of motion in his thoracolumbar spine, Dr. Martinucci noted that Woodside was in no apparent distress while seated, walked with a normal gait, and had no areas of atrophy in his lumbrosacral spinal region. (*Id.*) Accordingly, the ALJ's conclusion that Dr. Martinucci's highly restrictive opinion appeared to be based on Woodside's subjective complaints is supported by substantial evidence. (*Id.* at 28.)

14

Ultimately, the ALJ provided sufficient reasons for discounting Dr. Martinucci's opinion, and his decision to do so is supported by substantial evidence.

## C.   <u>RFC Determination</u>

Woodside also contends that the ALJ's RFC finding is legally insufficient because it "neglects to properly represent the evidence regarding the nature and extent of [his] limitations, which supports the conclusion that he cannot perform the demands of . . . even sedentary work." (Dkt. No. 8 at 22.) Specifically, Woodside complains that the ALJ failed to relate the limitations in his daily activities that he testified to, which are supported by his medical records, doctors' observations, and Dr. Martinucci's assessment. (*Id.* at 20-22.) Again, the court disagrees.

A claimant's RFC "is the most [he] can still do despite [his] limitations." 20 C.F.R. § 404.1545(a)(1); *see also id.* § 404.1594(b)(4). In assessing a claimant's RFC, an ALJ must consider "all of the relevant medical and other evidence," including a claimant's subjective complaints of pain. *Id.* § 404.1545(a)(3). An ALJ's RFC determination must be supported by substantial evidence in the record. *See* 42 U.S.C. § 405(g). If it is, that determination is conclusive and must be affirmed upon judicial

review.  *See id.*; *Perez v. Chater*, 77 F.3d 41, 46 (2d Cir. 1996).

Here, the ALJ determined that Woodside has the RFC to lift and carry twenty-five pounds occasionally and twenty pounds frequently, and, in an eight-hour workday, sit for six hours, stand for six hours, and walk for six hours.  (Tr. at 24.)  In making this determination, the ALJ considered Woodside's subjective complaints and treatment records, and relied on the medical opinions of Drs. Hancock, Janese, Boehlert, and Rivera.  (*Id.* at 25-28.)  The ALJ noted Woodside's testimony that, "due to his impairments, his ability to function has been substantially diminished and his activities of daily living have been significantly reduced."  (*Id.* at 25.)  Woodside argues that his testimony proves that he cannot stoop at all or sit, stand, and walk for the requisite length of time to perform even sedentary work.  (Dkt. No. 8 at 22.)  However, the ALJ determined that Woodside's testimony was only partially credible, which determination, as discussed below, *see infra* Part VI.D*,* is supported by substantial evidence. Because the ALJ considered Woodside's subjective testimony, the objective medical evidence, and other relevant factors, he was free to reject Woodside's testimony.  *See Martone v. Apfel*, 70 F. Supp. 2d 145, 151 (N.D.N.Y. 1999); *see also Williams ex rel. Williams v. Bowen*, 859

16

F.2d 255, 260 (2d Cir. 1988) ("As a fact-finder, an ALJ is free to accept or reject testimony.").

## D.  <u>Credibility Determination</u>

Finally, Woodside asserts that the ALJ's credibility determination was legally insufficient and unsupported by substantial evidence.  (Dkt. No. 8 at 22-25.)  To that end, Woodside argues that none of his treating physicians doubted the veracity of his symptoms, objective evidence and clinical observations show that his back condition was disabling, and the ALJ improperly relied on Woodside's poor work history to discount his credibility without questioning if his absences from the work place stem from his inability to work.  (Dkt. No. 8 at 23-24.)  Woodside also claims that the ALJ failed to make a sufficiently specific credibility finding.  (*Id.* at 24-25.)  The Commissioner responds that the ALJ properly evaluated all the evidence of record, which supports his credibility determination.  (Dkt. No. 10 at 13-16.)  Once again, the court agrees with the Commissioner.

Once the ALJ determines that the claimant suffers from a "medically determinable impairment[] that could reasonably be expected to produce the [symptoms] alleged," he "must evaluate the intensity and persistence of those symptoms considering all of the available evidence; and, to the

17

extent that the claimant's [subjective] contentions are not substantiated by the objective medical evidence, the ALJ must engage in a credibility inquiry." *Meadors v. Astrue*, 370 F. App'x 179, 183 (2d Cir. 2010) (internal quotation marks and citations omitted). In performing this analysis, the ALJ "must consider the entire case record and give specific reasons for the weight given to the [claimant's] statements." SSR 96-7p, 61 Fed. Reg. 34,483, 34,485 (July 2, 1996). Specifically, in addition to the objective medical evidence, the ALJ must consider the following factors: "1) daily activities; 2) location, duration, frequency and intensity of any symptoms; 3) precipitating and aggravating factors; 4) type, dosage, effectiveness, and side effects of any medications taken; 5) other treatment received; and 6) other measures taken to relieve symptoms." *F.S. v. Astrue*, No. 1:10-CV-444, 2012 WL 514944, at *19 (N.D.N.Y. Feb. 15, 2012) (citing 20 C.F.R. § 404.1529(c)(3)(i)-(vi)).

Relying principally on inconsistencies between Woodside's subjective complaints and the objective medical evidence, the ALJ determined that those complaints were only partially credible. (Tr. at 25.) Specifically, the ALJ noted that x-rays of Woodside's lumbrosacral spine in December 2010 and March 2011 revealed only mild degenerative disc disease. (*Id.* at 280,

18

289.)  Thereafter, in August 2011, Woodside complained of worsening lower back pain, but an x-ray showed only L5-S1 disc space narrowing, unchanged from the March 2011 films.  (*Id.* at 337-38.)  In October 2011, Dr. Boehlert's examination findings indicated that Woodside had good strength and stability.  (*Id.* at 309-12, *see id.* at 401 (impartial medical expert Hancock's report, explaining that the results of Dr. Boehlert's exam revealed "good strength [and] stability").)  The ALJ also noted that Woodside's complaints were contradicted by the opinions of the impartial medical experts, as well as both consultative examiners.  (*Id.* at 26-27.)  In addition, the ALJ considered Woodside's poor work history.  (*Id.* at 26.)

Woodside does not dispute the veracity of these facts, but argues that the ALJ erred by failing to ask him "any questions during the hearing" about his absence from the work place.  (Dkt. No. 8 at 24.)  It is true that a poor work history may either indicate a weak attachment to the work force and, thus, detract from a claimant's credibility, or "support an inference that a claimant's testimony of disability is truthful."  *Schaal v. Apfel*, 134 F.3d 496, 502 (2d Cir. 1998).  In *Schaal*, the Second Circuit advised ALJs to "explore a claimant's poor work history to determine whether [his] absence from the workplace cannot be explained adequately (making appropriate a

negative inference)." *Id.*  With that in mind, a review of the record in this

case demonstrates that remand is not required here.  At the administrative

hearing, Woodside was questioned by his attorney regarding his work

history and explained that he changed jobs in 2008 due to his back pain

and the limitations it caused, and stopped working all together in 2009 for

the same reason.  (Tr. at 42-46.)  Woodside further testified that he owned

a logging business from 1994-2005, during which time he also worked at

Gitano Transportation "[i]n the down times" to supplement his business.

(*Id.* at 44, 45-46.)  However, earnings records show that Woodside earned

no income from 1995 through 1997 as well as 2001.  (*Id.* at 161.)

Woodside offers no explanation as to how such evidence could be

adequately explained by his claims.  Rather, the court finds that the ALJ's

conclusion that such evidence detracts from Woodside's credibility is

reasonable.  *See Pietrunti v. Dir., Office of Workers' Comp. Programs*, 119

F.3d 1035, 1042 (2d Cir. 1997) ("Credibility findings of an ALJ are entitled

to great deference and therefore can be reversed only if they are patently

unreasonable." (internal quotation marks and citation omitted)).

Additionally, although the ALJ did not undertake a step-by-step

exposition of the factors articulated in 20 C.F.R. § 404.1529(c), "[f]ailure to

expressly consider every factor set forth in the regulations is not grounds for remand where the reasons for the ALJ's determination of credibility are sufficiently specific to conclude that he considered the entire evidentiary record." *Judelsohn v. Astrue*, No. 11-CV-388S, 2012 WL 2401587, at *6 (W.D.N.Y. June 25, 2012) (internal quotation marks and citation omitted); *see Oliphant v. Astrue*, No. 11-CV-2431, 2012 WL 3541820, at *22 (E.D.N.Y. Aug. 14, 2012) (stating that the 20 C.F.R. § 404.1529(c)(3) factors are included as "'examples of alternative evidence that may be useful [to the credibility inquiry], and not as a rigid, seven-step prerequisite to the ALJ's finding'" (quoting *Snyder v. Barnhart*, 323 F. Supp. 2d 542, 546 (S.D.N.Y. 2004))). Here, the ALJ explicitly acknowledged consideration of the 20 C.F.R. § 404.1529 factors, (Tr. at 24), and it is evident from his thorough discussion that his credibility determination was legally sound. *See Britt v. Astrue*, 486 F. App'x 161, 164 (2d Cir. 2012) (finding explicit mention of 20 C.F.R. § 404.1529 and SSR 96-7p as evidence that the ALJ used the proper legal standard in assessing the claimant's credibility). Moreover, the ALJ's determination that Woodside's subjective complaints were not credible to the extent that they suggested impairment greater than the ability to lift and carry twenty pounds or sit,

stand, and walk for six hours a day is supported by substantial evidence. (Tr. at 24, 25.)

**E**.    **Remaining Findings and Conclusions**

After careful review of the record, the court affirms the remainder of the ALJ's decision as it is supported by substantial evidence.

## VII.  Conclusion

**WHEREFORE**, for the foregoing reasons, it is hereby

**ORDERED** that the decision of the Commissioner is **AFFIRMED** and Woodside's complaint (Dkt. No. 1) is **DISMISSED**; and it is further

**ORDERED** that the Clerk close this case and provide a copy of this Memorandum-Decision and Order to the parties.

**IT IS SO ORDERED.**

February 23, 2016
Albany, New York

Gary L. Sharpe
U.S. District Judge